UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M.,<br><br>          Plaintiff,<br><br>     v.<br><br>ANDREW SAUL,<br><br>          Defendant. | Case No.  19-cv-04908-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AWARD OF BENEFITS**<br><br>Re: Dkt. Nos. 17, 18 |

## I.     INTRODUCTION

On April 27, 2015, Plaintiff J.M.[1] applied for Supplemental Security Income ("SSI") based on disability under Title XVI of the Social Security Act, alleging disability beginning February 10, 2003.   The claim was denied initially and upon reconsideration, and Kevin Gill, an administrative law judge ("ALJ"), held a hearing on May 25, 2018.  On August 30, 2018, the ALJ denied Plaintiff's application and on June 21, 2019, the Appeals Council denied Plaintiff's appeal of the ALJ's decision, making it the final decision of Defendant Commissioner of the Social Security Administration ("Commissioner").  After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for summary judgment.   For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Cross-Motion for Summary Judgment, and remands for award of benefits.[2]

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only his initials.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     The Five-Step Regulatory Framework

Disability insurance benefits are available under the Social Security Act (the "Act") when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1).  A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a sequential, five-part evaluation process to determine whether a claimant is disabled under the Act.  *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.  *Id.*  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Id.*

At step one, the ALJ considers whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).[3] If the claimant is engaged in such activity, the ALJ determines that the claimant is not disabled, and the evaluation process stops.  *Id.*  If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two.  *See id.*

At step two, the ALJ considers whether the claimant has "a severe medically determinable physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant does not have

U.S.C. § 636(c).
[3] Unless otherwise indicated, all references in this Order are to the regulations in effect at the time of the ALJ's decision. The Court cites the regulations applicable to disability insurance benefits applications because the parallel SSI regulations are virtually identical.

a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the analysis continues. *See id.*

At step four, the ALJ must assess the claimant's Residual Function Capacity ("RFC"). An RFC is "the most [a claimant] can still do despite [that claimant's] limitations ... based on all the relevant evidence in [that claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4). Past relevant work is "work that [a claimant] has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant is able to perform his past relevant work, then the ALJ finds that he is not disabled. If the claimant is unable to perform his past relevant work, then the ALJ proceeds to step five.

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [the claimant's] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). If the Commissioner meets this burden, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(f). Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform. *Id.*

**B.    Supplemental Regulations For Determining Mental Disability**

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R.

United States District Court
Northern District of California

§ 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Therefore, any medically determinable mental impairment—*i.e.*, one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*. at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1*,* 12.00(F)(2)(d).

This evaluation process is to be used at the second and third steps of the sequential evaluation discussed above. Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). If the Commissioner determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity. 20 C.F.R. §§

4

1    404.1520a(d)(3).  This is a "mental RFC assessment [that is] used at steps 4 and 5 of the

2    sequential process [and] requires a more detailed assessment by itemizing various functions

3    contained in the broad categories found in paragraphs B and C of the adult mental disorders

4    listings in 12.00 of the Listing of Impairments . . . . "  Social Security Ruling 96-8p, 1996 WL

5    374184, at *4.

6            **C.    Factual Background**

7            Plaintiff was 55 years old at the time of the ALJ's decision.  Administrative Record

8    ("AR") 40.  At the administrative hearing, he testified that he holds a bachelor of science degree in

9    marine biology and has an electrical contractor's license.  AR 41.  He last worked in 2003.  AR

10   42.  Plaintiff was in prison between 2004 and 2010 and for periods of time in 2014 and 2016.  AR

11   350,  550-649.  Since 2010 he has been homeless, living either on the street or with friends.  AR

12   753. At the time of the hearing, Plaintiff was living in an RV with a friend.  AR 44.

13           Plaintiff testified that he is unable to work because he cannot keep concentration and gets

14   confused due to his depression and PTSD.  AR 42. He testified that his depression began in 2002,

15   when he was "accused of crimes [he] didn't commit."  AR 45.  According to Plaintiff, his

16   symptoms of depression include anger, loss of interest in activities he used to enjoy, loss of

17   appetite, insomnia, decreased energy, feelings of worthlessness, difficulty concentrating, nausea,

18   restlessness, irritability, and panic attacks. AR 45-47. Plaintiff testified that he was threatened and

19   beaten unconscious while serving time in prison, and that he re-experiences this trauma through

20   weekly episodes of hyper reactivity and flashbacks.  AR 47-48.  He testified that he avoids groups

21   of people, hates going through security checkpoints, doesn't like conflicts, gets irritable or

22   sensitive when interacting with others most of the time, and that he has had problems getting along

23   with neighbors. AR 49. He testified that he has a hard time remembering, concentrating, and gets

24   easily frustrated. AR 50-51.

25           Regarding his physical impairments, Plaintiff testified that he experiences pain in his upper

26   back, right hip and thumbs; his back problems flare up 2-3 times a week, and his hip hurts most

27   days. AR 48-49.

28           Plaintiff received mental health treatment from Sausal Creek Outpatient Stabilization in

5

1    February 2014, AR 322-337, where he sought treatment for anxiety and depression.  AR 332.  In a

2    February 6, 2014 psychiatric evaluation, Plaintiff reported that he had been hospitalized three

3    times, and that both his mother and sister were diagnosed with bipolar disorder.  AR 323, 328. He

4    reported that he was depressed, anxious, crying a lot and had low motivation and energy.  AR 323.

5    He was diagnosed with depression not otherwise specified ("NOS"), anxiety NOS and Cannabis

6    Use unspecified, and was prescribed Remeron and Celexa.   AR 325, 327.

7          Plaintiff has received primary healthcare and mental health treatment from Lifelong

8    Medical Care ("Lifelong") since 2014.  AR 340-372, 650-751. At Lifelong, Plaintiff was

9    diagnosed with Major Depressive Disorder and Panic Disorder, and prescribed Effexor, Lexapro

10   and Zoloft.  AR 345, 350, 653.  He was also treated for bilateral hearing loss with hearing aids,

11   right hip pain with bony right femoral region, hypertension, and myopia of both eyes. AR 352,

12   355.  At his initial psychiatric evaluation, on October 30, 2014, Plaintiff reported "chronic

13   moderately depressed mood[,]" "poor sleep" and that he had been having panic attacks once or

14   twice a week for several months.  AR 350.  The report notes that Plaintiff had seen psychiatrists in

15   prison and taken "various medication." *Id*.  The following past medications are listed in the

16   report, along with Plaintiff's  observations about their efficacy and side-effects: "Paxil, ? dose,

17   took for two to three months, didn't help"; "Zoloft – 'felt foggy'"; "Wellbutrin – 'made me

18   irritable'"; "Remeron 45 mg po qhs 'too sedated'"; "Celexa 40 mg po qd – 'gave me weird

19   dreams.'"  AR 350;  *see also*  AR 355 (reporting "issues" with side effects with "many meds in the

20   past").  Plaintiff reported that he had been attending group counseling through his parole program

21   and was seeking individual therapy.  *Id.*

22          The medical records produced by Lifelong reflect that in 2015 and 2016 Plaintiff received

23   individual therapy from Claudia Madison, LCSW, approximately twice a month between July

24   2015 and March 2016, when Ms. Madison retired[4]; attended a Men's counseling group in the

25   summer of 2015, and was seen regularly by Psychiatrist Renee Thomas, M.D.  AR 340-528.

26

27   ────────────────

[4] Plaintiff told Ms. Madison at their last session, on March 24, 2016, that he had begun seeing
28   another therapist, Dr. Whitaker, but there are no medical records from Dr. Whitaker in the
     administrative record.  AR 683.

1    Plaintiff told Dr. Thomas in July 2016 that he was leaving the area, AR 677, and there is a gap in

2    the Lifelong treatment records in 2017.  In 2018, Plaintiff again saw Dr. Thomas and began

3    receiving therapy from Jennifer Wachter, LCSW, approximate two to three times a month. AR

4    650-785.

5          On September 9, 2015, a psychiatric evaluation was conducted by consultative examiner

6    Dr. Antoinette Acenas.  AR 535-538.  State agency examining physician Eugene McMillan, M.D.

7    submitted a report dated September 24, 2015 addressing Plaintiff's physical impairments.  AR

8    541-544.  A Third-Party Function Report was completed by Plaintiff's friend Sheila Martin on

9    June 28, 2015.  AR 225-232.  Plaintiff also completed two Adult Function Reports. AR 236-244

10   256-264.  A psychological report dated April 28, 2018 was completed by Dr. Katherine Wiebe,

11   Ph.D., who examined Plaintiff and conducted a battery of psychological tests, including MCMI-IV

12   testing.  AR 752-768.  In addition, Plaintiff's therapist, Ms. Wachter, completed a Mental

13   Impairment Questionnaire on May 18, 2018. AR 769-774.

14        **D.    The ALJ's Decision**

15        At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

16   since April 27, 2015.[5]  AR 19.

17        At step two, the ALJ determined that Plaintiff has the following severe impairments:

18   depressive disorder, anxiety (panic) disorder, personality disorder, post-traumatic stress disorder

19   (PTSD), alcohol use disorder, cannabis use disorder, and ostheoarthritis.  *Id.*

20        At step three, the ALJ held that Plaintiff does not have an impairment or combination of

21   impairments that meets or medically equals the criteria of listings 1.02 (major dysfunction of a

22   joint), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive

23   disorders), 12.08 (personality and impulse control disorder) or 12.15 (trauma- and stressor-related

24   disorders).  AR 20.

25        With respect to the mental impairments (all of the Listings the ALJ considered except

26

27   _____

28   [5] Although Plaintiff claimed an onset date of February 10, 2003, the ALJ considered only whether
     Plaintiff was under a disability from the date Plaintiff filed his application for SSI, April 27, 2015.
     AR 17.  Plaintiff does not challenge the ALJ's use of this date as the effective onset date.

United States District Court
Northern District of California

1.02), the ALJ's holding was based on his conclusion that Plaintiff's impairments do not satisfy the "B" criteria, with a mild limitation in understanding, remembering, or applying information, a moderate limitation interacting with others, a moderate limitation concentrating, persisting, or maintaining pace, and a moderate limitation adapting or managing himself. AR 21.

At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform medium work except he can lift and carry 50 pounds occasionally and 25 pounds frequently; he can sit for 6 hours in an 8-hour workday; he can push and pull as much as he can lift and carry; he can perform detailed but noncomplex tasks; and he is limited to work in a nonpublic environment. AR 22. The ALJ did not fully credit Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, finding that they were not entirely consistent with the medical evidence and other evidence in the record. *Id.* He assigned partial weight to the opinions of Dr. Katherine Wiebe and Dr. Antoinette Acenas, some weight to the lay opinion of Plaintiff's friend Sheila Martin, and little weight to the opinion of treating therapist Jennifer Wachter, LCSW. AR 26-28.

At step five, the ALJ determined that Plaintiff has no past relevant work, was 51 years old on the date he applied for SSI and therefore was defined as an individual closely approaching advanced age, and has at least a high school education. AR 28. Based on the ALJ's hypotheticals to the Vocational Expert ("VE") who appeared at the hearing, Freeman Leif, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Cleaner (DOT 726.687-042), Packager (DOT 920.587-018) and Laundry worker (DOT 361.685-018). AR 28-29; *see also* AR 36, 55-60. Accordingly, the ALJ concluded that Plaintiff is not under a disability within the meaning of the Social Security Act. AR 29.

## III.   ISSUES FOR REVIEW

1. Whether the ALJ erred by failing to provide specific, legitimate or germane reasons supported by substantial evidence for rejecting the opinions of treating therapist Jennifer Wachter and examining psychologist Dr. Katherine Wiebe.

2. Whether the ALJ erred by failing to provide clear and convincing reasons for discounting the statements of Plaintiff and his friend, Sheila Martin.

3.  Whether the ALJ erred in finding that Plaintiff's impairments do not meet or equal a listing.

4.  Whether the ALJ erred in determining Plaintiff's residual functional capacity.

5.  If the ALJ erred, whether the Court should remand for further proceedings or for award of benefits.

## IV.   ANALYSIS

### A.   Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings.  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).   When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free of legal error and supported by "substantial evidence." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record. *Richardson v. Perales*, 402 U.S. 389, 401. (1971).   "'Substantial evidence' means more than a mere scintilla," *id.*, but "less than preponderance."  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted).   Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)).   In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

### B.   Did the ALJ Fail to Provide Adequate Reasons for Rejecting the Opinions of Dr. Wiebe?

#### 1.  Background

Dr. Wiebe completed a psychological report dated April 28, 2018 based on a two-hour examination of Plaintiff, review of medical records from Lifelong covering the period May 21, 2014 to March 6, 2018 and from John George Psychiatric Pavilion dated July 2, 2003 (not in the

United States District Court
Northern District of California

file) related to a 5150 hold, and the results of psychological testing administered by Dr. Wiebe. AR 752-768.  In particular, Dr. Wiebe administered the following tests and procedures: Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"), Annotated Mini Mental State Examination ("AMMSE"), Trail Making A and B, Barona IQ estimate, Beck Depression Inventory (BDI-II), Beck Anxiety Inventory (BAI), Posttraumatic Checklist for DSM-5, Mental Status/Psychiatric Symptom Sheet, and Millon Clinical Multiaxial Inventory-IV (MCMI-IV). AR 757.

Plaintiff's formal neurocognitive testing results showed Plaintiff to be mildly impaired with respect to attention and concentration, memory, and visual/spatial abilities. AR 757-758. His depression inventory indicated he had moderate/borderline severe depression, with symptoms including feeling sad all the time, feeling discouraged about his future, feeling that he has failed, difficulty getting pleasure from the things he used to enjoy, low self-confidence, low energy, irritability, and reduced appetite. AR 758-759. Plaintiff's anxiety inventory indicated he is experiencing mild anxiety, and his trauma inventory indicated symptoms including intrusive memories, nightmares, flashbacks, avoidance, negative beliefs about himself, angry outbursts, hypervigilance, and difficulty trusting others. AR 759.

Dr. Wiebe diagnosed Plaintiff with Major Depression, recurrent, severe; Posttraumatic Stress Disorder, and anxiety, along with unspecified personality disorder with negativistic and dependent personality traits, and paranoid and schizoid personality features. AR 764-765. She found that Plaintiff had moderate impairments in attention/ concentration/ persistence, and moderate impairments in judgment/insight, as well as severe impairments in activities of daily living and social functioning. AR 767. She also determined that Plaintiff had moderate impairment getting along and working with others without excessive irritability, sensitivity, argumentativeness, or suspiciousness, moderate impairment interacting appropriately with the general public, moderate impairment accepting instructions and responding appropriately to criticism from supervisors, moderate impairment responding appropriately to changes in a routine work setting/ normal work stressors, moderate to marked impairment completing a normal workday/week without interruption from psychologically-based symptoms, and moderate to

1   marked impairment maintaining regular attendance and being punctual within customary usually

2   strict tolerances. AR 767-768.

3           The ALJ assigned partial weight to the opinions of Dr. Wiebe, concluding that Plaintiff is

4   "less limited than Dr. Wiebe opined." AR 26.  He offered the following reasons for his

5   conclusion: 1) a purported inconsistency in Dr. Wiebe's findings about Plaintiff's social

6   functioning; 2) "significant inconsistency between Dr. Wiebe's characterization of Plaintiffs

7   depression as severe and contemporaneous records that indicate the depression is in

8   partial remission[;]" 3) the medical record does not support Dr. Wiebe's diagnosis of PTSD and

9   unspecified personality disorder.  AR 26.

10          **2.  Discussion**

11          "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

12  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

13  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

14  physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996).

15  Under this hierarchy, a treating physician's opinion is entitled to more weight than an examining

16  physician's opinion, and an examining physician's opinion is entitled to more weight than a non-

17  examining physician's opinion.  *Id.*  To reject the uncontradicted opinion of an examining doctor,

18  the ALJ must provide clear and convincing reasons.  *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502,

19  506 (9th Cir.1990).  Even if the examining doctor's opinion is contradicted by another doctor, the

20  ALJ may reject it only for "specific and legitimate reasons."  *Id.* (citing *Andrews v. Shalala*, 53

21  F.3d 1035, 1043 (9th Cir.1995)).[6]  The latter standard applies here because the opinions of Dr.

22  Acenas as to the severity of Plaintiff's limitations contradict Dr. Wiebe's opinions.  The Court

23  finds that the reasons the ALJ offered for giving Dr. Wiebe's opinions only partial weight do not

24  meet the "specific and legitimate reasons" standard and are not supported by substantial evidence.

25

26

27  [6] These standards apply to claims filed before March 27, 2017. *See* Revisions to Rules Regarding
    the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844,
28  at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a).  As stated above,
    Plaintiff filed his claim for SSI benefits on April 27, 2015.

United States District Court
Northern District of California

1    First, the ALJ found Dr. Wiebe's opinions about social functioning to be inconsistent on

2    the basis of a purported inconsistency between her determination that Plaintiff had a "severe"

3    impairment in "social functioning" (AR 767), but moderate impairments in his ability to: "get

4    along and work with others without excessive irritability, sensitivity, argumentativeness, or

5    suspiciousness"; "interact appropriately with the general public"; and "accept instructions and

6    respond appropriately to criticism from supervisors" (AR 768).   The general category of "social

7    functioning", however, encompasses a variety of abilities, as is reflected in the Mental Functioning

8    Questionnaire Plaintiff's therapist was asked to complete.  *See* AR769-774.  In that form, the

9    practitioner is asked to rate the claimant's "overall" ability to interact with others and also to rate

10   the claimant's abilities in seven different subcategories relating to social functioning, including the

11   ability to handle conflicts with others, the ability to initiate or sustain a conversation, the ability to

12   ask for help and the ability to respond to social cues.  AR 771-772.  Given that the general

13   category of "social functioning" is clearly broader than the specific limitations identified by the

14   ALJ, it is not apparent that Dr. Wiebe's opinions about Plaintiff's limitations with respect to social

15   functioning are inconsistent.  The Court finds that this is not a legitimate reason to reject Dr.

16   Wiebe's opinions as to the severity of Plaintiff's limitations.

17   The ALJ's reliance on notations in Plaintiff's records describing his depression as being in

18   "partial remission" also does not meet this standard.  First, the significance of the "partial

19   remission" notations found in some of Plaintiff's treatment notes under the heading "Axis I" is

20   unclear with respect to Plaintiff's specific symptoms and limitations.  Clearly it did not mean that

21   Plaintiff had no symptoms or limitations associated with his depression diagnosis, as the ALJ

22   recognized when he found Plaintiff's depression to be a severe impairment at step two.

23   Likewise, the same treatment notes containing the "partial remission" notation indicate that

24   Plaintiff was not symptom-free.  For example, in a treatment note from an April 2, 2018 visit with

25   LCSW Wachter, Plaintiff's depression diagnosis included the notation "in partial remission" but

26   the PHQ-9 screening administered by LCSW Wachter indicated "moderately severe depression."

27   AR 777-778.  LCSW Wachter described Plaintiff as "[d]isheveled" and presenting with the

28   following symptoms of depression during this session:  "depressed" mood, "constricted" affect,

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1   "tangential" thought process, and thought content characterized as "ruminations depressive." *Id*.

2   Plaintiff was "tearful" and described being "down" and depressed for the past two weeks, with

3   "little interest or pleasure, tired/low energy, no appetite, [and] poor concentration." AR 778.

4   Plaintiff was scheduled to return in two weeks "for ongoing therapy to decrease depression and

5   anxiety." AR 782.

6       When Plaintiff returned, on April 30, 2018, LCSW Wachter again  included the "partial

7   remission" notation but described Plaintiff's mood as "depressed" and "anxious," his affect as

8   "constricted, sad[,]" his thought content as "Preoccupations / Ruminations Depressive Self-

9   Deprecatory" and his thought process as "Tangential." AR 783-785. She also described Plaintiff's

10  cognition as "Impairment of Attention/Concentration Short-term Memory."  AR 783.  And she

11  again scheduled Plaintiff to return in two weeks for therapy to "decrease depression and anxiety."

12  AR 785.

13      Thus, in the context of the record as a whole and the treatment notes of the Lifelong

14  providers who included the "partial remission" notation, it is  unclear what symptoms and

15  limitations it might refer to, but it *is* clear that that notations does not mean that Plaintiff was

16  experiencing no symptoms from his depression,.  The ALJ's reliance on these notations to find an

17  inconsistency with Dr. Wiebe's opinions without any discussion of what the term "partial

18  remission" signified therefore is not a specific and legitimate reason for rejecting Dr. Wiebe's

19  symptom opinions.

20      Further, while the description of Plaintiff's depression diagnosis in some treatment notes

21  contain a "partial remission" notation, many do not.  *See* AR 351 (Dr. Thomas 10/30/14

22  assessment as "major depressive disorder, recurrent");  AR 354 (NP Bohman 12/18/14 assessment

23  as "major depressive disorder, recurrent episode"); AR 384 (LCSW Madison 7/9/15 assessment of

24  "major depressive disorder, recurrent episode, Fair Control"); AR 391 (Dr. Thomas 10/28/15

25  assessment of "major depressive disorder, recurrent"); AR 393 (Dr. Thomas 9/30/2015 assessment

26  of "major depressive disorder, recurrent"); AR 395 (Dr. Thomas 8/12/15 assessment of "major

27  depressive disorder, recurrent");  AR 651 (LCSW Wachter 3/12/18 assessment of "major

28  depressive disorder, recurrent, moderate"); AR 657 (Dr. Thomas 2/28/18 assessment as "major

1    depressive disorder, recurrent, moderate, partial improvement"); AR 660 (LCSW Wachter 2/27/18

2    assessment as "major depressive disorder, recurrent, moderate"); AR 665 (LCSW Wachter

3    2/06/18 assessment as "major depressive disorder, recurrent, moderate"); AR 668 (Dr. Thomas

4    1/28/18 assessment as "major depressive disorder, recurrent, moderate"); AR 730 (LCSW

5    Madison 9/10/15 assessment of "major depressive disorder, recurrent episode, Symptomatic"); AR

6    733 (LCSW Madison 8/13/15 assessment of "major depressive disorder, recurrent episode,

7    Symptomatic");  AR 736 (LCSW Madison 8/13/2015 assessment of "major depressive disorder,

8    recurrent episode, Symptomatic").

9            As the medical records consistently reflect, Plaintiff's depression was diagnosed as

10   "chronic," "recurrent" and "episodic" rather than constant.  Yet the ALJ, without explanation,

11   relied selectively on the treatment notes that contained the "partial remission" notation to support

12   his conclusion.  The Ninth Circuit has found that  "[c]ycles of improvement and debilitating

13   symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a

14   few isolated instances of improvement over a period of months or years and to treat them as a

15   basis for concluding a claimant is capable of working."  *Garrison v. Colvin*, 759 F.3d 995, 1017–

16   18 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).  That is

17   what the ALJ did here, cherry-picking treatment notes suggesting improvement while ignoring the

18   broader record showing Plaintiff's depression is chronic, with periods of improvement and periods

19   in which his symptoms of depression were more severe.

20           Finally, the Court concludes that the ALJ did not offer a specific and legitimate reason for

21   declining to give full weight to Dr. Wiebe's opinions based on his conclusion that the medical

22   record does not support Dr. Wiebe's diagnosis of PTSD and unspecified personality disorder.

23   This reason is insufficient for two reasons.  First, there is no indication that any other provider

24   ever administered the mental health tests that Dr. Wiebe relied upon to make this diagnosis.

25   Among other things, Plaintiff's PTSD diagnosis was based on his MCMI-IV profile, which Dr.

26   Wiebe concluded was valid and showed no sign of malingering.  AR 761, 764.  The ALJ points to

27   no deficiency in Dr. Wiebe's administration of psychological tests to Plaintiff or her reliance on

28

United States District Court
Northern District of California

1       the results she obtained.  To the extent he apparently rejects her reliance on Plaintiff's MCMI-IV

2       profile to support his PTSD diagnosis, he offers no explanation for doing so.

3                  Second, the ALJ's conclusory statement that the diagnosis is inconsistent with the medical

4       record is not supported by substantial evidence. While other providers did not list PTSD as one of

5       Plaintiff's diagnoses, their treatment notes echo Dr. Wiebe's description of Plaintiff's PTSD

6       symptoms.  According to Dr. Wiebe, Plaintiff experiences "distressing recollections, and he is

7       likely to avoid exposure to the cues that resemble or symbolize aspects of the dramatic event in

8       question." AR 763.  She states further that Plaintiff experiences "recurring nightmares" and

9       "flashbacks" that cause him to become "terrified" and that "[a]nticipating these recurrences may

10      result in other signs of distress including difficulty falling asleep, outbursts of anger, panic attacks,

11      hypervigilance, an exaggerated startle response, or a numb or detached disposition." *Id.*

12                 These observations are consistent with treatment notes reflecting that Plaintiff experiences

13      panic attacks and that he reported a history of sexual assault while in prison. *See, e.g.,* AR 350

14      (10/30/14 treatment note by Dr. Thomas noting that Plaintiff had been having panic attacks "1-2

15      times a week for the past several months" and diagnosing him with panic disorder);  AR 342

16      (5/06/2015 treatment note by Dr. Thomas noting that Plaintiff had experienced "fewer panic

17      attacks" but again listing panic disorder diagnosis);  AR 345 (3/11/2015 treatment note by Dr.

18      Thomas noting that Plaintiff had had "few panic attacks" but continuing to list panic disorder

19      diagnosis); AR 650-651 (3/12/18 treatment note by LCSW Wachter describing Plaintiff's assault

20      while in prison and plan to further explore Plaintiff's "anxiety and impact of past trauma"); AR

21      665 (2/6/18 treatment notes of LCSW Wachter describing, *inter alia*, "problems with sleep"); AR

22      667 (1/31/18 treatment notes by Dr. Thomas describing panic attacks, "initial insomnia and

23      frequent waking").

24                 Therefore, the Court concludes that the ALJ failed to offer specific and legitimate reasons

25      supported by substantial evidence for giving only partial weight to the opinions of Dr. Wiebe.[7]

26      _____

27      [7] The Court notes that the Commissioner argues in his motion that the medical record shows that
        Plaintiff's symptoms were "a reasonable reaction to . . . situational stressors [such as his housing
        insecurity], rather than disabling mental illness."  Defendant's Cross-Motion at 1-2.  Because this

28      was not one of the reasons articulated by the ALJ in support of his finding of non-disability, the

United States District Court
Northern District of California

**C.     Did the ALJ Fail to Provide Adequate Reasons for Rejecting the Opinions of LCSW Wachter**

**1.  Background**

LCSW Wachter was Plaintiff's therapist at the time of the hearing before the ALJ and the record includes treatment notes for seven individual psychotherapy sessions between February 6, 2018 to May 7, 2018. AR 650,659, 661, 663, 779, 782, 785.  She completed a Mental Impairment Questionnaire dated May 18, 2018. AR 769-774.  In the Mental Impairment Questionnaire, LCSW Wachter noted that Plaintiff has had ongoing depression for many years, he has taken and failed two antidepressants (Effexor and Lexapro ) and is now on Zoloft, with continuing moderately severe depression and often moderate anxiety. AR 769. She noted that while his "panic had improved[,]" his "depression and more generalized anxiety have remained." *Id.*  She reported that Plaintiff's signs and symptoms include: significant deficits in complex attention, executive functioning, learning and memory, language, perceptual-motor, or social cognition; diminished interest in almost all activities; periodic sleep disturbance; easy or frequent distractibility; easily fatigued; detachment from social relationships; difficulty organizing tasks; depressed mood; irritability; distrust or suspiciousness of others; feelings of inadequacy; instability of interpersonal relationships; and disturbance in mood or behavior. AR 770.

LCSW Wachter found that Plaintiff has an overall moderate to marked limitation understanding, remembering or applying information, including a markedly limited ability to use reason and judgment to make work-related decisions, and a moderately to markedly limited ability to:  ask and answer questions and provide explanations; identify and solve problems; and sequence multi-step activities. AR 771. She determined that Plaintiff has an overall markedly limited ability to interact with others, including a markedly limited ability to handle conflicts with others, understand and respond to social cues, and keep interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. AR 771-772.  She determined that Plaintiff has

Court declines to consider it here.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require [this court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citation omitted).

United States District Court
Northern District of California

1    an overall markedly limited ability to concentrate, persist, or maintain pace, including a markedly

2    limited ability to complete tasks in a timely manner, ignore or avoid distractions, work close to

3    others without interrupting or distracting them, and work a full day without needing more than the

4    allotted number or length of rest periods. AR 772. LCSW Wachter determined that Plaintiff has

5    an overall moderately limited ability to adapt or manage himself, though he has a markedly limited

6    ability to adapt to changes and maintain personal hygiene and attire appropriate to a work setting.

7    AR 772.

8         In describing the clinical findings which support her opinion, LCSW Wachter stated that

9    Plaintiff has "longstanding depression, anxiety, and trauma history that impair his daily and

10   societal functioning[;]" he is "easily distracted and overwhelmed in new situations and with new

11   people[;]" he has "an overwhelmingly negative self-concept that impact his motivation and his

12   interpersonal interactions[,]" which "feeds his anxiety and low frustration tolerance[;]" he "has a

13   very hard time" maintaining focus, adapting to change, and getting along with others, and

14   "multiple losses in recent years have increased his depression." AR 773. LCSW Wachter opined

15   that Plaintiff would miss four days or more of work per month and would be off task more than

16   30% of an 8-hour workday on a sustained basis. *Id.* LCSW Wachter stated that Plaintiff does not

17   have a substance use disorder, but experiences difficulty regularly taking medications "off-and-

18   on" because "when he has problems with meds he has not had the motivation or problem solving

19   skills to be able to continue." *Id.* She observed that Plaintiff's symptoms over time are "likely

20   getting worse" given his "ongoing psychosocial stressors and poor self-concept." *Id.*

21        The ALJ assigned "little weight" to the opinions of LCSW Wachter, finding that her

22   "opined functional limitations . . . are much more restrictive than the evidence supports." AR 27.

23   In particular, the ALJ found that her opinions were not consistent with the record, which showed

24   that Plaintiff sought treatment for depression and anxiety but "also reflect[ed] generally normal

25   mental status examinations" and that Plaintiff's symptoms "improved with medication." AR 28.

26   The ALJ further found that LSCW's opinions were "without substantial support from any

27   objective clinical or diagnostic findings" and that the opinions she expressed were "quite

28   conclusory." *Id.* Finally, he observed that LCSW Wachter's opinions were "inconsistent with the

United States District Court
Northern District of California

17

other opinion record of evidence." *Id.*

### 2. Discussion

At the time of the ALJ's decision, the regulations treated "[p]ublic and private social welfare agency personnel" as "other sources" rather than "acceptable medical sources." 20 C.F.R. § 404.1513(a), (d)(3).  As such, the opinions of a social worker were governed by the same standard that applies to lay witness testimony, which the ALJ may expressly disregard if the ALJ "'gives reasons germane to each witness for doing so.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).  In giving LCSW Wachter's opinions little weight, the ALJ did not meet that standard.

First, the ALJ's statement that the record reflects "generally normal status examinations" mischaracterizes the record and is not supported by substantial evidence.   Indeed, many of the status examinations in the record were *not* normal.  *See* AR 325 (2/6/14 Mental Status Examination by Sausal Creek provider indicating depressed mood, sad affect, and marginal judgment and insight); AR 422 (1/28/16 assessment  by LCSW Madison describing mood as anxious, noting that Plaintiff arrived barefoot even though weather was cold and rainy); AR 437 (10/22/15 assessment by LCSW Madison describing Plaintiff's mood and affect as "depressed, tearful"); AR 440 (10/8/15 assessment by LCSW Madison describing affect as "generally congruent, though tearful at times" and thought process as "somewhat tangential"); AR 449 (8/27/15 assessment by LCSW Madison describing Plaintiff as "more tearful than usual" and having more mood swings and one panic attack; describing affect as "depressed, tearful"); AR 452 (8/14/15 assessment by Dr. Thomas describing Plaintiff as tearful and characterizing thought process as "somewhat tangential. Mild paranoia?"); AR 494 (2/11/16 assessment by LCSW Madison describing Plaintiff's mood as "anxious" and affect as "congruent, irritable"); AR 665 (2/06/18 assessment by LCSW Wachter describing Plaintiff as "disheveled", his mood as "depressed anxious", his thought process as "tangential", his thought content characterized by "Preoccupations/ Ruminations Depressive Self-Deprecatory" and impairments in attention/ concentration and short term memory, insight and judgment); AR 777 (4/2/18 assessment by LCSW Wachter describing Plaintiff as "disheveled", his mood depressed, his affect constricted,

18

his thought processes as "tangential loose", his thought content characterized by "Preoccupations/ Ruminations Depressive Self-Deprecatory" and impairments in attention/ concentration and short term memory, insight and judgment); AR 783 (4/30/18 assessment by LCSW Wachter describing Plaintiff's mood as "depressed anxious", his affect as "constricted, sad", his thought process as "tangential", his thought content characterized by "Preoccupations/ Ruminations Depressive Self-Deprecatory" and impairments in attention/ concentration and short term memory, insight and judgment).

Nor does the ALJ's provide a germane reasons for rejecting LCSW Wachter's opinions on the basis of treatment notes that indicate that Plaintiff has responded positively to medication. While providers (including LCSW Wachter) have sometimes observed that Plaintiff's symptoms have diminished when he takes Zoloft, *see, e.g.,* AR 663, the ALJ does not point to any evidence that contradicts LCSW Wachter's opinion that even on Zoloft, "he continues to test with moderately severe depression [and] often moderate anxiety." AR 769. While "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits[,]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), the ALJ's apparent conclusion that Plaintiff's mental impairments are sufficiently controlled by medication is not supported substantial evidence here. As discussed above, the record is replete with notations showing that Plaintiff experienced symptoms of depression and anxiety while taking an anti-depressant, even though they sometimes were more severe than others. It also reflects that many past attempts to treat Plaintiff's mental impairments with medication were not successful. *See* AR 350 (10/302014 psychological evaluation by Dr. Thomas describing history of failed medications prescribed to treat his depression and anxiety and noting Plaintiff had "issues" with side effects with "many meds in the past").

The ALJ also does not address LCSW Madison's opinion in the questionnaire (mirrored in her treatment notes and the medical records of other providers) that Plaintiff has difficulty staying on his medication because he does not have the motivation or problem solving skills to deal with problems in getting his medications when they arise. AR 773; *see also* AR 452 (8/13/2015 note by Dr. Thomas that Plaintiff was off his antidepressant because of "insurance difficulties"); AR 663

United States District Court
Northern District of California

United States District Court
Northern District of California

(2/6/18 treatment note by LCSW Wachter that Plaintiff "not able to consistently take medication" because he is "moving around a lot and camping out.").  The Ninth Circuit has cautioned that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  The same is true where an inability to adhere to a medication regimen is itself a reflection of a claimant's mental limitations, as the record reflects here.

The Court also rejects the ALJ's reliance on LCSW Wachter's "conclusory" statements on the mental health questionnaire. Rather than merely checking boxes, LCSW Wachter provided detailed responses explaining her opinions.  *See* AR 773-774.  Moreover, her treatment notes, which cover the months leading up to the ALJ's hearing, are detailed and consistent with her response on the questionnaire.  On the other hand, the ALJ's statement that LCSW Wachter's opinions were "inconsistent with the other opinion record of evidence" is entirely conclusory.  *Id.*  Because the ALJ did not identify the opinions he found to be inconsistent with LCSW Wachter's opinions, this reason for discounting LCSW Wachter's opinions is not sufficient to meet the ALJ's burden.

Therefore, the Court finds that the ALJ failed to offer germane reasons that are supported by substantial evidence to reject the opinions of LCSW Wachter regarding the severity of Plaintiff's mental limitations.

**D.    Did the ALJ Err by Failing to Provide Adequate Reasons for Rejecting the Symptom Testimony Offered By Plaintiff**

**1.    Background**

As set forth above, Plaintiff testified about his physical and mental limitations at the hearing before the ALJ. He also completed two Adult Function Reports, on July 9, 2015 and November 30, 2016, describing, *inter alia*, his difficulties with anxiety, depression and lack of motivation, memory and focus, confusion, getting along with other people, and poor sleep due to nightmares.  *See* AR 236-244, 256-264.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely

consistent with the medical evidence and other evidence in the record."  AR 22.[8] With respect to

Plaintiff's mental impairments, the ALJ found that Plaintiff's symptoms were not as severe as

described by Plaintiff because Plaintiff "has not generally received the type of medical treatment

one would expect for a disabled individual."  AR 24.  According to the ALJ, Plaintiff's treatment

was "routine and conservative" and even when he sought treatment, his psychiatric medications

were "generally effective in controlling his symptoms," his mental status exams were

"unremarkable," and some of his treatment notes reflected that his depression was in partial or full

remission.  AR 24.

### 2.  Discussion

In evaluating the credibility of a claimant's testimony, the ALJ is required to engage in a

two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must

determine whether the claimant has presented "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation

omitted). At this step, the claimant is merely required to show that their impairment "could

reasonably have caused some degree" of their symptoms. *Vasquez*, 572 F.3d at 591 (citation

omitted). The claimant is not required to demonstrate that their impairment "could reasonably be

expected to cause the severity" of the symptoms they allege. *Id.*

Second, if the claimant satisfies the first step and there is no evidence of malingering, the

ALJ can only reject the claimant's testimony about the severity of their symptoms by offering

"specific, clear, and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.[9]  "Although

the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the

court] to meaningfully determine whether the ALJ's conclusions were supported by substantial

---

[8] Although Plaintiff challenges the ALJ's conclusions as to both his mental and physical
impairments, the Court does not reach his argument that the ALJ erred with respect to his physical
impairments because it would reach the same ultimate conclusion regardless of whether or not
Plaintiff is correct as to that challenge.
[9] The Commissioner states an objection for the record to the Ninth Circuit's "clear and
convincing" standard but recognizes that this Court is bound by Ninth Circuit authority.  *See*
Defendant's Cross-Motion for Summary Judgment at 8 n. 5.

evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).  These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citation omitted).

Here, no treatment provider ever suggested that Plaintiff was malingering and Dr. Wiebe expressly found that he was not.  AR 761.  The ALJ also made no finding of malingering. Therefore, the standards set forth above apply to the ALJ's credibility determination.  Further, the Court concludes that the ALJ failed to meet that standard. The Court has already addressed the ALJ's error in relying selectively on notations indicating Plaintiff's depression was in partial or full remission and ignoring treatment notes reflecting increased symptoms when he rejected LCSW Wachter's opinions about Plaintiff's limitations.  For the same reasons, the ALJ erred to the extent he offered these reasons for declining to credit Plaintiff's testimony with respect to the severity of his symptoms.

The Court also rejects the ALJ's reliance on Plaintiff's purported failure to obtain treatment consistent with his complaints. The Ninth Circuit has held that in assessing a claimant's credibility, an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  However, the ALJ must consider "possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of [the claimant's] complaints" before discounting the claimant's symptom testimony on this basis.  *See* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).  Among other reasons that may adequately explain a claimant's failure to obtain treatment consistent with the level of the claimant's complaints, "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services."  *Id.* Moreover, where failure to seek

22

1    mental health treatment or adhere to the treatment recommendations of providers is attributable to

2    the claimant's mental impairment, it does not provide a valid basis for discounting a claimant's

3    symptom testimony.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that the

4    ALJ did not err in discounting a claimant's credibility where there was "no medical evidence that

5    [the claimant's] resistance was attributable to her mental impairment than her own personal

6    preference").

7            Here, the ALJ cited Plaintiff's "routine and conservative treatment" as well as the gap in

8    treatment in 2017.  As to the former, though, the ALJ offered no explanation as to what treatment

9    Plaintiff failed to obtain that discredited his symptom testimony and his conclusion is not

10   supported by substantial evidence.  Except for the period in 2017 in which there was a gap in

11   treatment (discussed below), Plaintiff's records reflect that he received mental health treatment in

12   prison and that he has been put on numerous medications to treat his depression and anxiety, many

13   of which were not successful; starting in 2014 he was seen regularly by a psychiatrist (Dr.

14   Thomas), attended therapy approximately twice a month (LCSW Madison and later LCSW

15   Wachter) and he participated in a regular men's counseling group in the summer of 2015.  For

16   these periods of time, the ALJ's conclusion that Plaintiff's treatment was "routine and

17   conservative" and more limited than would be consistent with his complaints is not supported by

18   substantial evidence.

19           Further, while the ALJ mentions the gap in treatment in 2017, AR 25, he did not ask

20   Plaintiff to address the reasons for it at the hearing and did not address in his decision whether the

21   gap was "unexplained."  In fact, treatment notes indicate that Plaintiff's failure to obtain mental

22   health treatment attributable, at least in part, to his mental impairments and/or his difficulties

23   accessing mental health care.  *See* AR 663 (2/6/18 treatment note by LCSW Wachter indicating

24   that in 2017 Plaintiff headed to Florida after a friend died and ended up in Texas to visit another

25   friend who died and had difficulty accessing mental health care while "moving around a lot and

26   camping out"); AR 773 (LCSW Wachter questionnaire stating that Plaintiff has difficulty with

27   medications because low motivation and lack of problem solving skills made it difficult to handle

28   problems with obtaining medications).  Because the ALJ did not address whether the gap in

United States District Court
Northern District of California

23

1  mental health care was "unexplained" and the medical records suggest an explanation unrelated to

2  the severity of Plaintiff's complaints, the ALJ's reliance on this gap is not a specific, clear and

3  convincing reason for his credibility determination.

4        The Court therefore finds that the ALJ failed to offer specific, clear and convincing reasons

5  for his credibility determination, which is not supported by substantial evidence.

6       **E.**   **Did the ALJ Err by Failing to Provide Adequate Reasons for Rejecting the**

7             **Opinions of Sheila Martin?**

8           **1.**  **Background**

9       In June 2015, Plaintiff's friend Sheila Martin completed a Third-Party Function Report

10  describing Plaintiff's functional abilities. AR 225-232. Ms. Martin stated that she had known

11  Plaintiff for six years and that Plaintiff was helping train her dog, taking her to doctor's

12  appointments, and helping with grocery shopping. AR 225.  Ms. Martin stated that Plaintiff could

13  not "concentrate and follow through on tasks [she] assign[ed] him" and that he fell asleep while

14  doing work for her.  *Id.*   With respect to personal care, she noted that his clothes were "often

15  dirty, even though he [had] access to a washing machine[,]" that his bathing was "haphazard" and

16  his feet were "always dirty[,]" that he doesn't shave and has a "long unkempt beard[,]" and that he

17  often has "bad breath."  AR 226.  She stated that Plaintiff "needs to be told to take a bath and

18  brush his teeth" at least once a week.  AR 227.   She stated that he "cannot keep up with the

19  paperwork to be on welfare." AR 229.  She reported that he is unable to follow any kind of written

20  instructions and "struggles" to follow spoken instructions and "often has to be reminded."  AR

21  230.  She observed that he became upset and anxious unable to function in response to stress and

22  changes in routine, and would lash out and get angry for no reason. AR 231.  She noted that

23  "when he is suffering from a deep depression he does not communicate with others and shuts

24  himself off from any human contact. These episodes of deep depression can last from a few weeks

25  to months at a time. When [Plaintiff] is suffering he doesn't eat healthy or take care of personal

26  hygiene." AR 232.

27       The ALJ gave Ms. Martin's statements "some weight" but found that her assertions as to

28  Plaintiff's limitations were not persuasive to the extent they went beyond the limitations adopted

United States District Court
Northern District of California

by the ALJ in Plaintiff's RFC, citing his discussion of the medical record, which he found did not support additional limitations.  AR 27.

### 2.   Discussion

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted).  Ordinarily, an ALJ must provide specific reasons, "germane to each witness," to reject the testimony of a lay witness.  *Id.* (citations and quotation marks omitted).  While, "[i]nconsistency with medical evidence" may be a germane reason for declining to credit the testimony of a lay witness, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted), a conclusory statement such as the one here is not sufficient to meet the ALJ's burden.  The ALJ was "required to consider and comment upon" Ms. Martin's testimony as it concerned how Plaintiff's impairments impact his ability to work.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  While the ALJ purported to do so, stating that he incorporated some limitations into Plaintiff's RFC based on Ms. Martin's statements, he did not identify any particular limitation in Plaintiff's RFC that corresponded to Ms. Martin's statements; nor did he explain what additional limitations he found were unwarranted based on Plaintiff's medical records.  While the burden for rejecting a lay witness's testimony is not high, the ALJ's boilerplate statement as to Ms. Martin's testimony falls short and constitutes legal error.

### F.   Remedy

"A district court may affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

"further administrative proceedings would [not] be useful"; and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case).

Here, the Court concludes that an award of benefits is warranted under the credit-as-true rule.  As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting he testimony of the claimant and lay witness Sheila Martin, and the opinions of LCSW Wachter and Dr. Wiebe.  Had the ALJ done so, Plaintiff's RFC would have been significantly more restrictive, and would have included an inability to maintain a regular work schedule, among other things. *See* AR 765 (Dr. Wiebe's opinion that Plaintiff would have "difficulty being able to maintain a regular job"); AR 773 (LCSW Wachter's opinion that Plaintiff would miss more than four days or work a month and be "off-task" more than 30% of the time);  AR 225, 232 (Ms. Martin's observation that Plaintiff cannot follow through with work when he is depressed and goes through periods of "deep depression" when he does not communicate with others and shuts himself off from any human contact for "a few weeks to months at a time").  In light of the VE's testimony at the hearing that none of the jobs he identified would be available to an individual with such a limitation, *see* AR 57-59, the current record supports a finding of disability at step five[10] if evaluated under the proper legal standards.  The Court further finds that the record is adequately developed and that no further proceedings are required.

---

[10] Because the Court finds that Plaintiff would be disabled at step five, it does not reach the question of whether Plaintiff may also be disabled under one of the Listings discussed above.

**V.      CONCLUSION**

      For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's Cross-Motion for Summary Judgment and remands to the Commissioner for calculation and award of benefits.

      **IT IS SO ORDERED.**

Dated:  March 7, 2021

JOSEPH C. SPERO
Chief Magistrate Judge